70986, 70987. IN THE INTEREST OF M. S. et al.
(343 SE2d 152)

BANKE, Chief Judge.

This is an appeal from the juvenile court's order terminating the appellants' parental rights in regard to their three children (M. S., age 8; S. S., age 7; A. A. S., age 4) pursuant to OCGA § 15-11-51 (a) (2). They enumerate as error the procedure used by the juvenile court in the taking of testimony from the oldest child, M. S., contending that the procedure violated the due-process clause and the Sixth Amendment of the United States Constitution.

The procedure utilized to elicit the testimony of M. S. is as follows: "The interview facilities for the taking of the testimony shall be provided by the Hall County Department of Family and Children Services, which consists of an interview room wired for sound and an observation room. The interview may be seen through a one-way mirror from the observation room. People in the observation room can neither be seen nor heard by the witness who does not know that she is being observed by anyone except the guardian ad litem and the guardian ad litem's attorney, both of whom shall be the only people present in the interviewing room with the witness. The only people allowed in the observation room shall be the necessary technicians for the running of the audio and video equipment, the judge, the lawyers for the parents and the Department of Family and Children Services, a court reporter and the official juvenile court reporter. The proceedings, that is, all that is said in the interview room and the observation room shall be transcribed. The witness, guardian ad litem, attorney for the guardian ad litem shall be videotaped. Attorney for the guardian ad litem shall first question the witness. Objections to the questions shall be made known to the court and shall be concisely stated softly into the microphone I am holding. This will assure, for the microphone that is in the room, this will assure that it's being recorded. The court will immediately rule on the objection, also into the microphone. There shall be no further argument after ruling is made. The objection and ruling can be heard by the attorney for the guardian ad litem in the interview room through a small ear-mounted receiver and she shall respond accordingly. Neither the objection nor the ruling can be heard by the guardian ad litem nor the witness in the interview room. After the guardian ad litem has completed questioning the witness, questions from the other attorneys may be propounded through the microphone in the observation room. The questions can be heard by the attorney for the guardian ad litem through the ear-mounted receiver and shall be repeated verbatim to the witness. Objections to questions shall be handled in the same manner as described above." Appellants complain not only that this procedure was defective, but that the evidence presented does not support the

termination of their parental rights. *Held*:

Our review of the record convinced us that, although the evidence was sufficient to warrant the termination of the appellants' parental rights, reversal is required because the procedure utilized to question the crucial witnesses was defective.

The United States Supreme Court has held that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment and that state intervention to terminate the relationship between a parent and child must consequently be accompanied by procedures meeting the requisites of the due-process clause. *Santosky v. Kramer*, 455 U. S. 745, 753 (102 SC 1388, 71 LE2d 599, 606) (1982). See also *Lassiter v. Dept. of Social Svcs.*, 452 U. S. 18 (101 SC 2153, 68 LE2d 640) (1981). "[D]ue process requires that we afford this liberty interest the same protection on appellate review as we afford those constitutionally protected interests in cases where a criminal conviction is had." *Blackburn v. Blackburn*, 249 Ga. 689, 693 (292 SE2d 821) (1982). Thus, the argument that termination proceedings are "entirely civil in nature" will not support the conclusion that the appellants in this case had no due process right to confront the witnesses on whose testimony the state's case was based. See also OCGA § 15-11-31 (a).

While the trial court's concern for ensuring that the children were able to testify free from possible intimidation by their parents is understandable, there does not appear to have been any reason for excluding the appellants from the observation room, where, though they could not have been seen or heard by the children, they would have been able to assist their counsel in propounding questions to the children. The trial court's judgment is accordingly reversed, and the case is remanded for a new hearing.

*Judgment reversed and case remanded. Deen, P. J., Birdsong, P. J., Carley, Sognier, and Pope, JJ., concur. Beasley, J., concurs in judgment only. McMurray, P. J., and Benham, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

As I do not agree that the special procedure adopted by the juvenile court was violative of due process, or that the Sixth Amendment is directly applicable (other than as required by due process) to proceedings in juvenile court, I respectfully dissent.

First, I would hold appellants' reliance upon the Sixth Amendment to be misplaced. Generally, the Sixth Amendment applies to criminal prosecutions. "[T]he juvenile court proceeding has not yet been held to be a 'criminal prosecution,' within the meaning and reach of the Sixth Amendment." *McKeiver v. Pa.*, 403 U. S. 528, 541 (91 SC 1976, 29 LE2d 647).

Also, while appellants enumerate as error the procedure which

the juvenile court set up for the taking of testimony from M. S., most of their argument is addressed to their lack of access to the children during the weeks prior to the hearing on the petition to terminate parental rights. See in this regard *In the Interest of L. L. W.*, 141 Ga. App. 32 (232 SE2d 378). This court has no jurisdiction to consider grounds which, though argued, are not enumerated as error. *Sunn v. Trophy Marine, Inc.*, 176 Ga. App. 68, 69 (2) (334 SE2d 884).

Appellants contend that the procedure for taking testimony from M. S. was fundamentally unfair in that the questioning was conducted by parties who had prejudged this case. This argument is predicated upon the testimony of the guardian ad litem that she was of the opinion that appellants' parental rights should be terminated and the testimony of the guardian ad litem's attorney that she believed M. S.'s statement that she had been sexually abused.

I find it quite understandable that the guardian ad litem and her attorney, both of whom were aware of significant portions of the evidence which would be presented at the hearing of this case, would form some personal opinion in regard thereto. However, I can find nothing in the record to suggest that the personal opinions of these two individuals were in any way reflected in the testimony of M. S. Indeed, the procedure formulated by the juvenile court afforded no opportunity for such to occur. The guardian ad litem was silent during the testimony of M. S., apparently present only to provide emotional support for the child during the stress of giving testimony. The attorney for the guardian ad litem questioned M. S. first. Appellants' counsel was free to object to any perceived misconduct of the attorney for the guardian ad litem during her questioning of M. S. No objections of this nature were made. Counsel for the appellant mother had no questions for M. S. The attorney for the appellant father then conducted his cross-examination of M. S. through the procedure directed by the juvenile court. The attorney for the guardian ad litem repeated the questions of the attorney for the appellant father verbatim to M. S. Had the guardian ad litem failed to comply with the juvenile court's directions in this regard or injected any personal prejudices, the appellant father's attorney was free to object. No objection of this nature was made.

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Cit.]" *Mathews v. Eldridge*, 424 U. S. 319, 335 (96 SC 893, 47 LE2d 18).

Our society is increasingly facing the pervasiveness of child abuse. As more cases involving child abuse, both civil and criminal, reach the courts, we are confronted with the reality that often the abused child's testimony is essential if the truth is to be presented. Thus arises a strong State interest in eliciting the abused child's testimony. At the same time, we must avoid again abusing the child in order to obtain that testimony or depriving any party of constitutional rights. Nor should we lose sight of the gravity of the underlying controversy in the case sub judice, termination of parental rights. See in this regard *Santosky v. Kramer*, 455 U. S. 745 (102 SC 1388, 71 LE2d 599). Under the circumstances of the case sub judice, balancing the interest of the State in obtaining the testimony of M. S. against the interest of appellants in a more conventional procedure and considering my perception that the procedure adopted by the juvenile court is no less probable to elicit truthful testimony, I find no deprivation of due process in the procedure adopted for taking the testimony of M. S.

DECIDED MARCH 21, 1986.

*J. Richardson Brannon*, for appellants.
*David A. Fox*, for appellee.