A97A0264. IN THE INTEREST OF B. G. et al., children.
(484 SE2d 293)

JOHNSON, Judge.

The mother of B. G. and R. G. appeals the decision of the juvenile court terminating her parental rights in these children.

1. In her first enumeration of error, the mother contends the juvenile court erred in excluding her from the courtroom while her children testified against her. Even though the mother had apparently not arrived at the time the children began testifying, the guardian ad litem requested the mother be excluded because her presence might affect the children's testimony. The trial court agreed without hearing any evidentiary basis for this request and specifically ruled that the mother would be barred from the courtroom while the children testified. The mother's attorney objected to this procedure, claiming it would violate his client's right to confront the witnesses against her.

The record is unclear as to when the mother arrived at the hearing. When the hearing began, the mother's attorney stated he had notified his client to attend but did not know where she was. On cross-examination in the termination hearing, the mother admitted she had arrived 45 minutes late but stated she tried to arrive on time. The record does not show whether she was present at the courthouse during any of the children's testimony or whether she tried to enter the courtroom but was prevented from doing so. But if she did arrive in time to hear the children testify, the trial court's ruling would have prevented her from entering the courtroom.

The children testified regarding their visitation with their mother, including their conversations with her, and each child stated he would prefer not to live with his mother. Both of the children testified that their mother forced them to write letters to the juvenile court complaining about their guardian ad litem, and to a licensing board complaining about a psychologist who had evaluated them.[1]

This Court's decision in *In the Interest of M. S.*, 178 Ga. App. 380, 381 (343 SE2d 152) (1986) requires us to find the trial court's exclusion of the mother from the courtroom during this testimony was error because it prevented the mother from assisting her attorney in propounding questions to the children. See also OCGA § 15-11-31 (a), granting a party to a termination proceeding the right to cross-examine adverse witnesses.

Although *M. S.* is distinguishable on its facts, it recognizes that there is no more serious legal proceeding than an action to terminate a parent's rights and that such a proceeding must be conducted in a manner designed to protect the fundamental due process rights of the parent. Id.; see *Watkins v. Watkins*, 266 Ga. 269, 270 (1) (466 SE2d 860) (1996). In this case, the juvenile court prevented the mother from effectively assisting her attorney in countering allegations that she had forced them to make unfounded complaints. The mother was also prevented from assisting her attorney in challenging the children's versions of their conversations with her. In light of the court's reference to the children's testimony in its findings of fact, its ruling must be reversed and this matter remanded for a new hearing.

The state contends the mother had not yet appeared for the hearing when the children testified and, therefore, waived any right to be present. We agree that the juvenile court could conclude the mother had waived her right to be present when the proceedings began, as the evidence indicates she knew of the proceedings and

---

[1] Although the children's testimony regarding their activities and conversations with the mother may be relevant to show the future prospects of the parent-child relationship, it is unclear how the children's feelings about living with their mother relate to her legal right to be their mother.

failed to arrive on time without giving a reason for her absence. See generally *Winfield v. State*, 210 Ga. App. 849, 850 (1) (437 SE2d 849) (1993). However, the record does not clearly show the mother was absent during the entire testimony of her children. Because the record shows the trial court specifically excluded the mother from the courtroom and does not show she waived her right to confront the children once she arrived, we cannot say the error was harmless. See generally *In re J. S. C.*, 182 Ga. App. 721, 724 (1) (356 SE2d 754) (1987) (physical precedent only).

A juvenile judge may take steps to accommodate a child witness' fears in testifying, as many courts have determined. See *Maryland v. Craig*, 497 U. S. 836, 851-852 (III) (110 SC 3157, 111 LE2d 666) (1990) (child abuse victim may be protected from facing defendant); *In the Matter of the Adoption of J. S. P. L*, 532 NW2d 653, 660-661 (N.D. 1995) (child may testify outside parent's presence in case involving termination of parental rights); *In re Michael C.*, 557 A2d 1219, 1221 (R.I. 1989) (trial judge has discretion to limit confrontation to prevent trauma to child witness in custody case). In such cases, however, the trial court must make an evidentiary finding that the child would be substantially traumatized by the event and that the child's welfare compels a limitation on the party's right to confront the child witness. See *Craig*, supra at 855-856 (III); accord *J. S. P. L.*, supra. Any procedure which limits the party's ability to confront the child witness must also be tailored to protect the right of confrontation to the greatest extent possible. See *Craig*, supra at 857 (III). As in *M. S.*, supra, the trial court erred by completely excluding the mother from the courtroom without a showing of necessity and without using procedures which would accommodate her ability to hear the testimony and consult with her attorney.

2. Because the issue may surface on remand, we address the mother's contentions that this termination action is barred by collateral estoppel or double jeopardy. The children were originally determined to be deprived based on evidence that they were living in unsanitary conditions and that the mother chased one of the children around the house with a maul. The mother was also convicted of reckless conduct and cruelty to children based on those facts. On appeal, however, this Court reversed the reckless conduct conviction based on an improper jury charge. *Brewton v. State*, 216 Ga. App. 346 (454 SE2d 558) (1995). The Supreme Court granted certiorari and held that proof of an unsanitary house cannot, by itself, support a conviction for cruelty to children under OCGA § 16-5-70 (b). *Brewton v. State*, 266 Ga. 160 (465 SE2d 668) (1996). The mother contends that the reversal of her criminal convictions estops the state from finding that her children were deprived and contends that further "punishment" for the incidents giving rise to the criminal charges

would constitute double jeopardy.

(a) *Collateral Estoppel.* A termination proceeding is primarily a civil matter and is decided on a lesser standard of proof than that found in criminal actions. See *In the Interest of S. L. W.*, 221 Ga. App. 509 (471 SE2d 579) (1996) (clear and convincing standard); *Ray v. Dept. of Human Resources*, 155 Ga. App. 81, 84 (1) (270 SE2d 303) (1980) (action civil in nature). Therefore, an acquittal or conviction in a criminal case does not prohibit a subsequent civil action arising from the same incident. See *Halligan v. Consolidated Mgmt. Svcs.*, 258 Ga. 471 (369 SE2d 745) (1988). Moreover, collateral estoppel could not apply in this case because no factfinder has determined the incidents giving rise to the deprivation charges and criminal charges did not occur; rather, this Court reversed one conviction based on an error of law, and the Supreme Court merely held that the proven facts did not constitute a violation of OCGA § 16-5-70 (b). See *Brewton*, supra, 266 Ga. 160, 162 (2); 216 Ga. App. 346, 351 (6). "[C]ollateral estoppel applies where an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment." (Emphasis omitted.) *Kent v. Kent*, 265 Ga. 211 (1) (452 SE2d 764) (1995). Here, neither this Court nor the Supreme Court reversed the jury's determinations that the alleged incidents occurred, nor did the Supreme Court determine these facts could not support a finding of deprivation.

(b) *Double Jeopardy.* An action to terminate parental rights is primarily a civil action. See *Ray*, supra. For double jeopardy to bar a civil proceeding, clear proof must show that "the proceeding is so punitive in fact that it may not legitimately be viewed as civil in nature despite the intent that it be so. [Cit.]" *Murphy v. State*, 267 Ga. 120, 121 (475 SE2d 907) (1996). As OCGA § 15-11-1 makes clear, the laws allowing termination of parental rights are designed to protect children. They are remedial, and actions under them do not expose to double jeopardy the parent whose rights are sought to be terminated. See *In re Interest of Theodore W.*, 545 NW2d 119, 129 (Neb. App. 1996) (parental rights termination action is remedial in nature and does not expose parent to double jeopardy); see also *Pennyman v. State*, 222 Ga. App. 779, 780 (476 SE2d 71) (1996) (purpose of action to terminate police officer's employment is to protect the department's reputation, the public, and other officers and is, therefore, remedial).

3. Our holding in Division 1 renders moot the mother's remaining enumerations of error.

*Judgment reversed and case remanded for new hearing. Pope, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1997.

*Clark & Towne, David E. Clark, Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer,* for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Cheeley & King, Grantland G. King III, Deborah A. Stone,* for appellee.