S97A1791. STATE OF GEORGIA et al. v. JACKSON.
(496 SE2d 912)

HINES, Justice.

This is an appeal from an order of the superior court in a declaratory judgment action finding that OCGA § 49-5-183.1 is unconstitutional.

OCGA § 49-5-183.1 is part of a general statutory scheme providing for the establishment and maintenance of a central registry of confirmed, and unconfirmed, reports of child abuse, known as the "Child Protective Services Information System" ("CPSIS"). See OCGA § 49-5-180 et seq. ("the Act"). Under the Act, when an abuse investigator[1] completes an investigation of a child abuse report, the investigator makes a written report to a county office of the Department of Family and Children Services ("DFACS"), classifying the report as either unfounded (no credible evidence that child abuse occurred), confirmed (at least equal or greater credible evidence that abuse did occur), or unconfirmed (some credible evidence that abuse occurred, but not sufficient evidence to classify the report as confirmed). See OCGA §§ 49-5-180 (6), (10) & (12); 49-5-183 (a). The report includes information identifying the abuse victim, the victim's parents or guardian, and the person who allegedly committed the abuse. OCGA § 49-5-183. Upon receiving a report of "confirmed" or

---

[1] Defined as the state Department of Human Resources, any county office of the Department of Family and Children Services, a "law enforcement agency, or district attorney or designee thereof." OCGA § 49-5-180 (1).

"unconfirmed" child abuse, a county DFACS office is to notify the alleged abuser of the report classification. OCGA § 49-5-183.1 (b). The person so notified may request a hearing within ten days of receipt of the notice, which is presumed to have occurred five days after mailing. OCGA § 49-5-183.1 (b) & (c). Any hearing is conducted before an administrative law judge ("ALJ") in accordance with the Georgia Administrative Procedure Act. See OCGA §§ 49-5-183.1 (e); 50-13-1 et seq. The ALJ determines if the evidence meets the required standard for the classification. OCGA § 49-5-183.1 (f). This constitutes the final administrative decision and may be appealed to the superior court; but the superior court's decision is not appealable. OCGA § 49-5-183.1 (g).

Decatur County DFACS notified Jackson that he was to be reported as a confirmed child abuser. He requested a hearing before an ALJ, which was scheduled. Jackson was also indicted on five counts of child molestation, and the hearing before the ALJ was continued until the conclusion of the criminal proceeding. Jackson was tried and acquitted on all five counts of child molestation, yet DFACS expressed its intention to continue its efforts to have Jackson listed on the CPSIS as "confirmed." Prior to the hearing before the ALJ, Jackson filed this action challenging the constitutionality of OCGA §§ 49-5-180; 49-5-183; and 49-5-183.1, and asking for an injunction against the scheduled hearing or any other efforts by DFACS to include him on the registry.

The superior court granted a temporary injunction and ruled that OCGA § 49-5-183.1, the section containing the mechanism by which an alleged child abuser is placed on the CPSIS, is unconstitutional. The court also granted a permanent injunction.

1. The superior court determined that OCGA § 49-5-183.1 violated Jackson's due process rights to compel witnesses on his behalf and confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments.[2] See *Washington v. Texas*, 388 U. S. 14 (87 SC 1920, 18 LE2d 1019) (1967); *Pointer v. Texas*, 380 U. S. 400 (85 SC 1065, 13 LE2d 923) (1965). OCGA § 49-5-183.1 (i) provides in part that "[n]o child under the age of 14 shall be compelled to appear to testify at any hearing held pursuant to this Code section." Thus, on its face, the statute prohibits anyone who is alleged to have abused children under the age of 14 from calling his or her accuser to the stand at the hearing before the ALJ.

The State contends that Jackson cannot assert a right to due process guarantees because listing him on the CPSIS does not

---

[2] The Sixth Amendment applies only in criminal cases. See *Pulliam v. Balkcom*, 245 Ga. 99 (1) (263 SE2d 123) (1980). However, this is not fatal to Jackson's claim of rights to compel and confront witnesses.

deprive him of liberty so as to implicate due process. It is true that stigmatization of reputation alone does not implicate a liberty interest sufficient to invoke federal due process protection. *Paul v. Davis*, 424 U. S. 693, 709 (96 SC 1155, 47 LE2d 405) (1976).[3] But more than Jackson's reputation is involved. The State is attempting to take further official action against him, based on the same alleged acts that underlie his criminal prosecution. This implicates his status as an exonerated criminal defendant and is therefore more than merely a stigmatization of reputation. See *Paul v. Davis*, supra at 708 (holding that the plaintiff in the prior case of *Wisconsin v. Constantineau*, 400 U. S. 433 (91 SC 507, 27 LE2d 515) (1971), had a protectable interest based upon her stake in her reputation, coupled with an alteration in her status). A party has standing to challenge the constitutionality of a statute if the statute has an adverse impact on that party's own rights. *Ambles v. State*, 259 Ga. 406 (1) (383 SE2d 555) (1989).

We find that Jackson's liberty interest is such that due process requires it be afforded the same protections in regard to the rights to compel and confront witnesses as are afforded to constitutionally protected interests in criminal prosecutions. See *Blackburn v. Blackburn*, 249 Ga. 689, 693 (2) (292 SE2d 821) (1982); *In the Interest of M. S.*, 178 Ga. App. 380, 381 (343 SE2d 152) (1986). The right to compel witnesses and the right to confront and cross-examine witnesses are fundamental rights, found in the Bill of Rights. They are essential to the ability to offer a defense, and are basic to our system of jurisprudence. *Chambers v. Mississippi*, 410 U. S. 284, 294 (93 SC 1038, 35 LE2d 297) (1973). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . This right is a fundamental element of due process of law." *Washington v. Texas*, supra at 19. The right to confrontation "(1) insures that the witness will give his statements under oath — thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; [and] (2) forces the witness to submit to cross-examination the 'greatest legal engine ever invented for the discovery of truth.'" *California v. Green*, 399 U. S. 149, 158 (90 SC 1930, 26 LE2d 489) (1970). Confrontation aids the factfinder by allowing it to observe the demeanor of the witness and assess the witness' credibility. Id. These rights are at the very core of the concept of a fair hearing.

Substantive due process requires that state infringement on fundamental rights be narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U. S. 292, 301-302 (113 SC 1439, 123

---

[3] Requiring more than mere stigmatization to reputation has been termed the "reputation plus" standard. See *Doe v. U. S. Dept. of Justice*, 753 F2d 1092, 1106 (D.C. Cir. 1985).

LE2d 1) (1993). See also *McKinney v. Pate*, 20 F3d 1550, 1556 (11th Cir. 1994). The state has a compelling interest in the welfare of children. *In re J. C.*, 242 Ga. 737, 738 (1) (251 SE2d 299) (1978). However, in no sense is this statute narrowly tailored to serve that interest. Rather, the statute prohibits, in all cases, the alleged child abuser from compelling the testimony of a child under the age of 14. Thus, the statute is not properly focused, but is impermissibly broad.

The State argues that the statute comports with the Child Hearsay Statute, OCGA § 24-3-16, which has been held to be constitutional. *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987).[4] However, the two statutes differ greatly. OCGA § 24-3-16 makes no attempt to prevent a party to a proceeding from compelling the testimony of a witness. To the contrary, OCGA § 24-3-16 recognizes the importance of the rights to compel testimony and confront witnesses; it allows an out-of-court statement of a child victim to be admitted only if "the child is available to testify in the proceedings." See *Reynolds v. State*, 257 Ga. 725 (4) (363 SE2d 249) (1988). But OCGA § 49-5-183.1 would prohibit the accused child abuser from compelling the witness' presence, and therefore prohibits him from assuring the witness' availability. Fundamental rights of one so accused cannot be ignored, and the presence of OCGA § 24-3-16 does not save OCGA § 49-5-183.1.

We must also determine whether we are faced with a facial challenge to the constitutionality of OCGA § 49-5-183.1, or a challenge to it "as applied." In *United States v. Salerno*, 481 U. S. 739, 745 (107 SC 2095, 95 LE2d 697) (1987), the United States Supreme Court stated that, generally, to mount a facial challenge to a statute a litigant must show that no set of circumstances exists under which the statute can operate constitutionally. However, subsequently, the United States Supreme Court has allowed a facial challenge to a statute when it would unconstitutionally impact a fundamental right in "a large fraction" of the cases to which the statute applies. *Planned Parenthood v. Casey*, 505 U. S. 833, 895 (112 SC 2791, 120 LE2d 674) (1992). Although the court did not state in *Casey* that it was departing from *Salerno*, the question of *Casey's* effect has been a matter of some debate. After examination we believe the soundest course is to "follow what the Supreme Court actually did — rather than what it failed to say." *Planned Parenthood v. Miller*, 63 F3d 1452, 1458 (8th Cir. 1995). Consequently, we conclude that a facial attack on a stat-

---

[4] The recent case of *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998) found unconstitutional the 1995 amendment to OCGA § 24-3-16 that allowed hearsay statements of a non-victim child witness to be introduced under the statute. However, *Woodard* did not affect the constitutionality of that portion of OCGA § 24-3-16 that allows introduction of child *victim* hearsay.

ute will be upheld if the statute operates unconstitutionally in a large fraction of the cases in which it applies. See also *Women's Med. Prof. Corp. v. Voinovich,* 130 F3d 187, 195-196 (6th Cir. 1997) (accepting the "large fraction" standard); *Florida League of Professional Lobbyists v. Meggs,* 87 F3d 457, 459 (11th Cir. 1996) (recognizing the debate in the context of a First Amendment challenge to a statute, but holding it did not need to be resolved under the facts of that case).

To determine that a large fraction of the cases under the statute will implicate a protected interest, we need not find that a large portion will share Jackson's specific situation of acquittal on criminal charges that formed the basis of the proceeding under OCGA § 49-5-183.1. This is not necessary because the statute *always* prohibits the alleged abuser from properly compelling and confronting witnesses, and therefore will operate unconstitutionally whenever there is an alleged abuser who has a fundamental liberty interest at stake. There is a fundamental liberty interest in the privacy and the integrity of families. See *Smith v. Organization of Foster Families,* 431 U. S. 816, 842-845 (97 SC 2094, 53 LE2d 14) (1977); *Blackburn,* supra. Parents have interests in the care, custody, companionship, and management of their children. *Stanley v. Illinois,* 405 U. S. 645, 651 (92 SC 1208, 31 LE2d 551) (1972); *Blackburn,* supra. A statute such as OCGA § 49-5-183.1 can impact these interests by, among other things, effectively driving a wedge into the family and adversely affecting its integrity. See *Bohn v. County of Dakota,* 772 F2d 1433, 1436, n. 4 (8th Cir. 1985).[5] Clearly, the Act will frequently be invoked when the person alleged to be a child abuser is a parent of the alleged victim, and we do not hesitate to conclude that the statute will, in a large fraction of the cases in which it applies, operate in an unconstitutional manner. The statute must be declared unconstitutional on its face.

When an unconstitutional portion of a statute is so connected with the general scope of the statute that to sever it would result in a statute that fails to correspond to the main legislative purpose, or give effect to that purpose, the statute must fall in its entirety. See *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays,* 266 Ga. 393, 404 (7) (467 SE2d 875) (1996); *Ga. Franchise Practices*

---

[5] The Act also impacts interests in employment. See *Valmonte v. Bane,* 18 F3d 992, 1003 (2nd Cir. 1994); *Lee TT v. Dowling,* 664 NE2d 1243, 1250 (N. Y. 1996). The registry is available to medical examiners, coroners, and "abuse investigators" from Georgia or other states. An abuse investigator includes the Department of Human Resources, all DFACS offices, law enforcement agencies, and district attorneys and their designees. OCGA § 49-5-180 (1). Despite requirements of confidentiality, see OCGA § 49-5-186, there is the clear potential for impairment of employment opportunities for those who are, or would attempt to be, employed by abuse investigators and others with registry access.

*Comm. v. Massey-Ferguson, Inc.*, 244 Ga. 800, 803 (6) (262 SE2d 106) (1979); *City Council of Augusta v. Mangelly*, 243 Ga. 358, 363 (2) (254 SE2d 315) (1979). The Act as a whole establishes and maintains the CPSIS, and does so for the protection of children. See Ga. L. 1990, p. 1772. Barring an accused from compelling the testimony of a child is apparently in furtherance of that goal. However, such a laudable purpose cannot override fundamental constitutional protections.

OCGA § 49-5-183.1 provides the procedure by which a person is classified as a child abuser, and is informed of and allowed to challenge that classification. The portion of OCGA § 49-5-183.1 that precludes an accused from compelling a child's testimony in the administrative proceedings is unconstitutional and central to the general scope of the Act; therefore, OCGA § 49-5-183.1 must be struck down in its entirety. Nor is it possible to limit the constitutional infirmity to OCGA § 49-5-183.1. OCGA § 49-5-181 requires the Division of Family and Children Services of the Department of Human Resources to establish and maintain a central registry. Those alleged under the Act to be child abusers must be afforded a constitutional procedure by which they can challenge their classification. OCGA § 49-5-183.1 is the only portion of the Act that provides the person so accused with any recourse. Unfortunately, it does not do so in a manner which comports with federal due process. Consequently, the entire Act, OCGA § 49-5-180 et seq., must be declared unconstitutional.

2. In view of this decision, the State's other contentions are either moot or without merit.[6]

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs specially, and Hunstein, J., who concurs in the judgment and in Division 3 of the special concurrence.*

---

[6] The superior court also found unconstitutional the final sentence of OCGA § 49-5-183.1 (g) ("[t]he decision of the superior court under this subsection shall not be subject to further appeal or review") as violative of Ga. Const. of 1983, Art. VI, Sec. VI, Par. II, which sets forth the exclusive appellate jurisdiction of this Court, including "all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question." Although we need not address this ruling, we note that to the extent that OCGA § 49-5-183.1 (g) can be construed to forbid a party from appealing to this Court a decision on the constitutionality of the statute itself, it would violate Ga. Const. of 1983, Art. VI, Sec. VI, Par. II, and the separation of powers doctrine, Ga. Const. of 1983, Art. I, Sec. I, Par. I. The legislature cannot, by statute, divest this Court of its jurisdiction under Art. VI, Sec. VI, Par. II. Compare *Penland v. State*, 256 Ga. 641 (352 SE2d 385) (1987), finding no constitutional infirmity with a statute barring review of a lower court's finding of fact; that statute did not attempt to bar review of the constitutionality of the statute itself. The legislature is empowered to determine the *procedure* by which an appeal in this Court's exclusive jurisdiction can reach this Court. See OCGA §§ 5-6-34 (b); 5-6-35 (a); *City of Atlanta Bd. of Zoning Adjustment v. Midtown North, Ltd.*, 257 Ga. 496, 497, n. 1 (360 SE2d 569) (1987) (holding that Art. VI, Sec. VI, Par. II, does not establish a right of direct appeal).

FLETCHER, Presiding Justice, concurring specially.

Because the child abuse registry statute limits the right of persons placed on the list to appeal their classification, I agree that it violates due process and, therefore, is unconstitutional.

1. OCGA § 49-5-183.1 governs challenges by persons who are deemed to be "an alleged child abuser" under the act establishing the central child abuse registry. Upon receiving a report of "confirmed" or "unconfirmed" child abuse, the county DFACS office must notify the alleged abuser of the report classification and of that person's right to appeal the classification in an administrative hearing.[7] The alleged child abuser may request a hearing within ten days of receipt of the notice.[8] Any hearing is conducted before an administrative law judge under the Georgia Administrative Procedure Act.[9] The ALJ must determine whether there was sufficient credible evidence to justify the investigator's classification of the alleged abuse as confirmed or unconfirmed.[10] The ALJ's decision constitutes the final administrative decision and may be appealed to the superior court. OCGA § 49-5-183.1 (g) specifically provides: "The decision of the superior court under this subsection shall not be subject to further appeal or review."

Although the plain language of the statute suggests that no appeal of the superior court decision may be taken in any case involving the abuse registry, this court must give a narrowing construction to statutes whenever possible to save the statute from a constitutional challenge.[11] Interpreting OCGA § 49-5-183.1 narrowly, I would construe it to mean that the superior court's decision is final only on the issue of the person's classification on the child abuse registry as confirmed or unconfirmed. Under this interpretation, the statute would preclude both the state and the individual placed on the registry from appealing decisions of the superior court related to the sufficiency of the evidence, but would not preclude either party from appealing superior court decisions related to the interpretation of the statute and the constitutionality of its various provisions.

2. Given this construction, the issue becomes whether a person's inability to appeal his or her classification on the registry violates due process. The Fourteenth Amendment protects citizens from deprivation of life, liberty, or property by the state without due process of law.[12] A due process analysis involves determining, first, whether

---

[7] OCGA § 49-5-183.1 (b).

[8] OCGA § 49-5-183.1 (d).

[9] See OCGA §§ 49-5-183.1 (e); 50-13-1 to 50-13-23.

[10] See OCGA § 49-5-183.1 (f).

[11] See *Gravely v. Bacon*, 263 Ga. 203, 206 (429 SE2d 663) (1993).

[12] I do not address whether the statute violates due process under the Georgia Constitution.

the state has deprived a person of a liberty or property interest and, if so, the amount of process that is due.[13] I agree with the majority opinion that a person who is listed on the child abuse registry has a liberty interest that is constitutionally protected. Although injury to reputation alone is not enough to create a liberty interest,[14] placement on the registry also affects a person's interest in family privacy and autonomy, employment, and freedom from police surveillance.[15] Because there are constitutional liberty interests involved, the state must provide adequate procedures before placing a person's name on the registry. The amount of process that is due depends on (1) the private interest affected by the state's action; (2) the risk of erroneous deprivation of that interest under the present procedure and the value of any additional procedural safeguards; and (3) the governmental interest involved.[16]

The registry statute implicates important interests of both the individual and the state. The state has a "significant interest in protecting children from abuse and maltreatment."[17] The individual has a privacy interest in not being labeled a child abuser for his lifetime. Placement on the registry may affect decisions related to an individual's custody of children, employment opportunities, and criminal charges. The registry information is available to DFACS workers, law enforcement agencies, district attorney's offices, medical examiners and coroners. Moreover, the statute provides weak criminal penalties for violating its confidentiality provisions and no civil remedies.

3. The critical factor in this case, however, is the risk of erroneous decisions under the statute. As the majority opinion points out, the statute prohibits compelling the appearance of any child under the age of 14, thus depriving the accused of the right to confront his accuser under the due process clause. This prohibition creates a risk since child abuse cases often depend on the credibility of witnesses and have little physical or other corroborative evidence.[18] Under Georgia's statute, the ALJ who makes the credibility determination may be relying on the hearsay testimony of a DFACS worker, coun-

---

[13] See *Morrissey v. Brewer*, 408 U. S. 471, 481 (92 SC 2593, 33 LE2d 484) (1972).

[14] See *Paul v. Davis*, 424 U. S. 693, 701 (96 SC 1155, 47 LE2d 405) (1976).

[15] See generally Jill D. Moore, *Charting a Course between Scylla and Charybdis: Child Abuse Registries and Procedural Due Process*, 73 N.C. L. Rev. 2063 (1995).

[16] See *Mathews v. Eldridge*, 424 U. S. 319, 335 (96 SC 893, 47 L.E.2d 18) (1976).

[17] *Valmonte v. Bane*, 18 F3d 992, 1003 (2nd Cir. 1994); see *J.P. v. Carter*, 485 SE2d 162 (Va. App. 1997) (registry's primary purpose is to protect the abused child and the community from offenders).

[18] See *A.Y. v. Commonwealth*, 641 A2d 1148, 1151 (Pa. 1994) (finding expungement hearing inadequate when agency relied on its employees' recitation of what the three-year-old child stated without producing the victim, any independent corroborative evidence, or any recording or transcript of the victim's statement).

selor, or parent who spoke with the child, rather than the child, because of the rule exempting children under 14 from testifying. This type of evidence prevents the accused from challenging his accuser and prevents the hearing officer from being able to judge the credibility of a key witness.[19]

Moreover, both the abuse investigators and the administrative judges are applying standards of proof that differ from the usual standards and have not been defined by a court of law: "If there is equal or greater credible evidence that the person committed the abuse than the person did not commit the abuse, the person's name shall be listed as a 'confirmed'; otherwise, the person's name shall be listed as an 'unconfirmed.' "[20] In addition, a person who is classified as "unconfirmed" remains on the registry for two years based on a finding that there is "some credible evidence" that child abuse occurred.[21] The Court of Appeals of New York has struck down the "some credible evidence" standard of proof as a basis for placement on its state registry as a violation of due process under the Federal Constitution.[22] As one commentator explains, "The standard provides a safeguard only against bad faith or entirely unfounded reports of child abuse. It does not substantially safeguard against accusations that are reasonable but erroneous, because the same evidence that motivated the report will provide the basis for confirming it."[23]

Based on these flaws, I conclude that the statute provides inadequate procedural safeguards and thus fails to ensure against the risk of wrongful placement on the registry. Because OCGA § 49-5-183.1 limits the right of individuals to challenge a finding of confirmed or unconfirmed child abuse that is based on a flawed procedure, I agree that the statute denies due process in violation of the Federal Constitution.

I am authorized to state that Justice Hunstein joins in Division 3 of this special concurrence.

DECIDED MARCH 20, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998.

---

[19] See id. at 1152.

[20] OCGA § 49-5-183 (b) (3).

[21] OCGA § 49-5-180 (10).

[22] *Lee TT v. Dowling*, 664 NE2d 1243 (N.Y. 1996); see also *Valmonte*, 18 F3d at 1003 (striking down a registry statute based on the "some credible evidence" standard used in the initial investigation and at the non-deprivation administrative hearing).

[23] Michael R. Phillips, *The Constitutionality of Employer-Accessible Child Abuse Registries: Due Process Implication of Governmental Occupational Blacklisting*, 92 Mich. L. Rev. 139, 188 (1993).

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General,* for appellants.
*Gilbert J. Murrah,* for appellee.