304 Ga. 425
FINAL COPY

S18A0803.  GEORGIA DEPARTMENT OF HUMAN SERVICES et al. v.
ADDISON et al.

NAHMIAS, Presiding Justice.

This case involves a variety of constitutional challenges to Georgia's Child Abuse Registry that a group of high school teachers and administrators filed directly in superior court after their names were put on the Registry.  We cannot properly reach the merits of those challenges, however — and neither could the trial court — because some of the claims are barred by sovereign immunity and the remaining ones should have been raised in the then-pending administrative proceeding also initiated by the teachers and administrators. Accordingly, we reverse the part of the trial court's order concluding that the court could decide the merits of the challenges, vacate the part of the order declaring the Registry statutes and rules to be unconstitutional and granting injunctive relief, and remand with direction to dismiss the case.

1.      The plaintiffs (now appellees) — Loy Addison, Archie Chatmon,

Lucinda Cooper, Erical Hall, and Kerrie Miller — are teachers and administrators who work with special education students at Albany High School in Dougherty County. After two alleged incidents of sexual abuse by some students against others, the plaintiffs were accused of child neglect for failing to provide adequate supervision to various numbers of students in the classroom and lunchroom. The accusations were investigated by Tammy Frazier, an investigator for DFCS — the Division of Family and Children Services of the Georgia Department of Human Services. She found the allegations to be "substantiated," and DFCS therefore added the plaintiffs' names to the Child Abuse Registry.[1]

DFCS then mailed to each of the plaintiffs two to four separate notices "regarding the substantiated case" as to individual children, informing the plaintiff of his or her right to a hearing to appeal the determination and the

---

[1] The Registry, which is also known as the Child Protective Services Information System, is maintained by DFCS. See OCGA § 49-5-181 (a). The Registry "receive[s] notices regarding substantiated [child abuse] cases occurring on and after July 1, 2016," and the goal of the Registry is "to enable abuse investigators to: (1) Immediately identify and locate substantiated cases; and (2) Maintain and produce aggregate statistical data of substantiated cases." Id. (a) & (b). Access to the Registry is limited to certain groups, including "abuse investigator[s]," government agencies that license entities that have interactions with children, and "licensing entit[ies]." OCGA § 49-5-185.

procedure for obtaining a hearing. OCGA § 49-5-183 (a).[2] The notices

identified each allegedly neglected child only by initials and a number in

parentheses that might indicate age. In most of the notices, the alleged neglect

was said to have occurred during the broad time frame of October 2016 through

February 2017; two notices said nothing at all about when the alleged neglect

occurred.

Following the procedure to initiate administrative review set forth in

OCGA § 49-5-183 (c), each appellee filed a written request for a hearing within

ten days of receipt of his or her notices.[3] The administrative law judge (ALJ)

---

[2] OCGA § 49-5-183 (a) says:

Upon receipt of an investigator's report of a substantiated case pursuant to Code Section 49-5-182 naming an alleged child abuser, the division [i.e., DFCS]:

(1) Shall include in the child abuse registry the name of the alleged child abuser, the classification of the abuse as provided in paragraph (4) of Code Section 49-5-182, and a copy of the investigator's report; and

(2) Shall mail to such alleged child abuser in such report a notice regarding the substantiated case via certified mail, return receipt requested. It shall be a rebuttable presumption that any such notice has been received if the return receipt has been received by the division. The notice shall further inform such alleged child abuser of his or her right to a hearing to appeal such determination. The notice shall further inform such alleged child abuser of the procedures for obtaining the hearing and that an opportunity shall be afforded all parties to be represented by legal counsel and to respond and present evidence on all issues involved.

[3] OCGA § 49-5-183 (c) says:

In order to exercise such right to a hearing, the alleged child abuser shall file a written request for a hearing with the division within ten days after receipt of such notice. The written request shall contain the alleged child abuser's current residence address and, if he or she has a telephone, a telephone number at which he or she may

3

be notified of the hearing.

The process for the administrative hearing and for judicial review of the agency's decision, both of which are generally governed by the Georgia Administrative Procedure Act (APA), OCGA §§ 50-13-1 to 50-13-44, is specified in the rest of OCGA § 49-5-183, which says:

> (d) If the division receives a timely written request for a hearing under subsection (c) of this Code section, it shall transmit that request to the Office of State Administrative Hearings within ten days after such receipt. Notwithstanding any other provision of law, the Office of State Administrative Hearings shall conduct a hearing upon that request in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," and the rules of the Office of State Administrative Hearings adopted pursuant thereto, except as otherwise provided in this article. The hearing shall be for the purpose of an administrative determination regarding whether, based on a preponderance of evidence, there was child abuse committed by the alleged child abuser to justify the investigator's determination of a substantiated case. The Office of State Administrative Hearings shall give notice of the time and place of the hearing to the alleged child abuser by first-class mail to the address specified in the written request for a hearing and to the division by first-class mail at least ten days prior to the date of the hearing. It shall be a rebuttable presumption that any such notice is received five days after deposit in the United States mail with the correct address of the alleged child abuser and the division, respectively, and proper postage affixed. Unless postponed by mutual consent of the parties and the administrative law judge or for good cause shown, such hearing shall be held within 30 business days following receipt by the Office of State Administrative Hearings of the request for a hearing, and a decision shall be rendered within five business days following such hearing. A motion for an expedited hearing may be filed in accordance with rules and regulations promulgated by the Office of State Administrative Hearings. The hearing may be continued as necessary to allow the appointment of counsel. A telephone hearing may be conducted concerning this matter in accordance with standards prescribed in paragraph (5) of Code Section 50-13-15. Upon the request of any party to the proceeding or the assigned administrative law judge, venue may be transferred to any location within this state if all parties and the administrative law judge consent to such a change of venue. Otherwise, the hearing shall be conducted in the county in which the alleged act of child abuse was committed. The doctrines of collateral estoppel and res judicata as applied in judicial proceedings are applicable to the administrative hearings held pursuant to this article.
>
> (e) At the conclusion of the hearing under subsection (d) of this Code section, upon a finding that there is not a preponderance of evidence to conclude that the alleged child abuser committed an act of child abuse, the administrative law judge shall order that the alleged child abuser's name be removed from the child abuse registry. The general public shall be excluded from hearings of the Office of State

consolidated the cases and scheduled them for a single hearing on September 29, 2017. In their brief to this Court, the plaintiffs represent that Cooper, Hall, and Miller challenged the constitutionality of the Registry statutes and rules in their filings in their administrative proceedings, and Cooper received an order on July 28, 2017, explaining that the ALJ is not authorized to resolve constitutional challenges.[4]

Administrative Hearings held pursuant to this article, and the files and records relating thereto shall be confidential and not subject to public inspection.

(f) Notwithstanding any other provision of law, the decision of the administrative law judge under subsection (e) of this Code section shall constitute the final administrative decision. Any party shall have the right of judicial review of such decision in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," except that the petition for review shall be filed within ten days after such decision and may only be filed with and the decision appealed to the superior court of the county where the hearing took place or, if the hearing was conducted by telephone, the Superior Court of Fulton County. The procedures for such appeal shall be substantially the same as those for judicial review of contested cases under Code Section 50-13-19 except that the filing of a petition for judicial review stays the listing of the petitioner's name upon the child abuse registry, and the superior court shall conduct the review and render its decision thereon within 30 days following the filing of the petition. The review and records thereof shall be closed to the public and not subject to public inspection.

(g) The administrative law judge shall transmit to the division his or her decision regarding the alleged child abuser and the investigator's report regarding such individual within ten days following that decision unless a petition for judicial review of that decision is filed within the permitted time period. If a timely petition for judicial review is filed within the permitted time period, the superior court shall transmit to the division its decision regarding the alleged child abuser and the investigator's report regarding such individual within ten days following that decision.

[4] One of the rules concerning administrative proceedings subject to the APA says: Whenever any party raises issues under either the Georgia or United States Constitution, the sections of any laws or rules constitutionally challenged and any

5

On August 16, 2017, while their administrative proceedings were still pending, the plaintiffs filed in the Superior Court of Dougherty County a petition for declaratory judgment and injunctive relief against the defendants (now appellants) — the State of Georgia acting through DFCS, along with Robyn Crittenden, the Director of the Georgia Department of Human Services; Bobby Cagle, who was at the time the Director of DFCS; and Frazier, all in their individual as well as official capacities.[5]  The plaintiffs asked the court to declare unconstitutional all of the Registry statutes (OCGA §§ 49-5-180 through 49-5-187) along with all of the rules implementing those statutes (Ga. Comp. R. & Regs. rr. 290-2-30-.01 through 290-2-30-.10).  The plaintiffs also asked for

---

constitutional provisions such laws or rules are alleged to violate must be stated with specificity. In addition, an allegation of unconstitutionality must be supported by a statement either of the basis for the claim of unconstitutionality as a matter of law or of the facts under which the party alleges that the law or rule is unconstitutional as applied to the party. Although the Administrative Law Judge is not authorized to resolve constitutional challenges to statutes or rules, the Administrative Law Judge may, in the Administrative Law Judge's discretion, take evidence and make findings of fact relating to such challenges.

Ga. Comp. R. & Regs. r. 616-1-2-.22 (3).

[5] As the plaintiffs' counsel acknowledged during oral argument, Bobby Cagle is no longer employed by the State of Georgia, so he can no longer give the plaintiffs any of the relief they seek. The appeal as to him in his individual capacity is therefore dismissed as moot.  See Smith v. Lawrence, 195 Ga. 682, 683 (25 SE2d 293) (1943).   Under OCGA § 9-11-25 (d) (1), Cagle's successor is automatically substituted as party in the suit against him in his official capacity, but, as explained in Division 2 below, this claim should have been dismissed by the trial court based on sovereign immunity.

6

a temporary restraining order and an injunction preventing the State from permanently including their names on the Registry.

On September 14, 2017, the superior court held an evidentiary hearing on the petition. The plaintiffs all testified, and while they each said that they had not yet been adversely affected by their names being put on the Registry, they were worried that they would be fired and have their teaching certificates revoked or not renewed if their names were not removed. They explained that they must apply to renew their teaching certificates every five years and the renewal application includes questions about whether the teacher has been investigated for child abuse. Frazier also testified, and it became clear that her investigation was far from thorough and did not include even basic measures like determining if any of the plaintiffs were responsible for the students at the time of the incidents or what the school's supervision requirements were for the students involved.

The defendants then filed a motion to dismiss the plaintiffs' petition, arguing that the claims were improper as a matter of administrative law and procedure. The defendants also argued that the suit was barred by sovereign immunity, that the plaintiffs did not have standing to bring their claims, and that

7

the Registry statutes and rules were constitutional. On October 4, 2017, the superior court issued an order rejecting all of those arguments and holding that the Registry statutes violate due process because alleged child abusers are not given an opportunity to be heard before being added to the Registry; the notices sent to the plaintiffs were insufficient because they did not give the names of the children or specific dates for the alleged abuse; and the definition of "substantiated case" in OCGA § 49-5-180 is vague. The court also held that the Registry statutes violate equal protection because they treat alleged abusers who are minors differently than adults, and violate the constitutional separation of powers because Frazier performed both executive and judicial branch functions. The court therefore declared OCGA §§ 49-5-180 through 49-5-187 and the implementing rules to be unconstitutional "on their face and as applied to" the plaintiffs and permanently enjoined the defendants from classifying the plaintiffs as substantiated child abusers on the Registry. According to the defendants' brief, the ALJ dismissed the plaintiffs' administrative cases after the superior court issued its order.

The defendants filed an application for discretionary appeal, which this Court granted. The defendants then filed a timely notice of appeal, and the case

was docketed to this Court's April 2018 term and orally argued on May 9, 2018.

2. We first address the defendants' contention that the plaintiffs' lawsuit is barred by sovereign immunity. See McConnell v. Dept. of Labor, 302 Ga. 18, 19 (805 SE2d 79) (2017). Under the Georgia Constitution, sovereign immunity bars suits against the State and state employees in their official capacities unless a statute or the Constitution itself specifically waives that immunity. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); Lathrop v. Deal, 301 Ga. 408, 424-425 (801 SE2d 867) (2017). The plaintiffs contend that the waiver required for their suit is provided by OCGA § 50-13-10, which establishes a cause of action for declaratory judgment to challenge the validity of an agency rule and requires that the pertinent agency be made a party to the action.[6]

---

[6] OCGA § 50-13-10 says, with emphasis supplied:

(a) The *validity of any rule, waiver, or variance may be determined in an action for declaratory judgment* when it is alleged that the rule, waiver, or variance or its threatened application interferes with or impairs the legal rights of the petitioner. A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule, waiver, or variance in question.

(b) *The agency shall be made a party to the action* and a copy of the petition shall be served on the Attorney General. The action shall be brought in the Superior Court of Fulton County or in the superior court of the county of residence of the petitioner. When the petitioner is a corporation, the action may be brought in the Superior Court of Fulton County or in the superior court of the county where the petitioner maintains its principal place of doing business in this state. All actions for

9

This Court has held, however, that OCGA § 50-13-10 does not apply in cases where a plaintiff's "contention is that [a statute] is unconstitutional and hence the rules promulgated thereunder are unconstitutional." George v. Dept. of Natural Resources, 250 Ga. 491, 493 (299 SE2d 556) (1983). See also Ledford v. Dept. of Transp., 253 Ga. 717, 717 (324 SE2d 470) (1985) ("OCGA § 50-13-10 is inapplicable here, as in George, because in their complaint the plaintiffs attack the constitutionality of the statute pursuant to which the [agency] rule was promulgated, as well as the rule itself."). As in George and Ledford, the plaintiffs here argue only that the rules implementing the Registry statutes are unconstitutional because the Registry statutes themselves are unconstitutional, so OCGA § 50-13-10 does not apply. The plaintiffs have identified no other source of a waiver of sovereign immunity, and none comes to mind. Accordingly, the State and its employees in their official capacities should have been dismissed from this case based on sovereign immunity.

The plaintiffs' suit against the employees in their individual capacities is

declaratory judgment, however, with respect to any rule, waiver, or variance of the Public Service Commission must be brought in the Superior Court of Fulton County.

(c) Actions for declaratory judgment provided for in this Code section shall be in accordance with Chapter 4 of Title 9, relating to declaratory judgments.

10

not barred by sovereign immunity, however. "[T]he doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional." Lathrop, 301 Ga. at 434. See also Holcombe v. Ga. Milk Producers Confederation, 188 Ga. 358, 363 (3 SE2d 705) (1939) ("Where an act is attacked as unconstitutional, . . . the suit against such officer [enforcing the act] can not be considered as one against the State, but the court will take jurisdiction of it as a suit against the officer as an individual acting without constitutional authority, and determine the question of the validity of the act."). Thus, only the plaintiffs' constitutional claims against Crittenden and Frazier in their individual capacities remain for us to address.[7]

3. The defendants also argue that the plaintiffs' case should have been dismissed by the superior court because the plaintiffs did not exhaust their available administrative remedies before seeking judicial review of their claims. See Ga. Dept. of Behavioral Health & Developmental Disabilities v. United

---

[7] Because the plaintiffs seek only prospective injunctive and declaratory relief, the claims against the employees in their individual capacities are not barred by the official immunity conferred by Article I, Section II, Paragraph IX (d) of the 1983 Georgia Constitution. See Lathrop, 301 Ga. at 443-444 (explaining that official immunity "does not limit the availability of prospective relief").

Cerebral Palsy of Ga., Inc., 298 Ga. 779, 786 (784 SE2d 781) (2016) ("Under long-standing Georgia law, the failure of plaintiffs to exhaust their available administrative remedies ordinarily precludes judicial relief."). See also OCGA § 50-13-19 (a) (In cases subject to the APA, "[a]ny person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review . . . ."). Each of the plaintiffs initiated the administrative review process made available by OCGA § 49-5-183 by requesting a hearing before an ALJ, and at least some of them apparently raised their constitutional challenges to the Registry statutes and rules in their administrative filings. But the plaintiffs then truncated that process by filing suit in superior court before the ALJ — or a superior or appellate court later in the process provided by OCGA § 49-5-183 and the APA — had the chance to consider their arguments to decide whether relief should be granted.

The plaintiffs contend that they were not required to exhaust their available administrative remedies because their constitutional challenges to the Registry statutes are entirely facial rather than as-applied. To the extent their challenges are facial, the plaintiffs are correct. See Women's Surgical Center

12

v. Berry, 302 Ga. 349, 351 (806 SE2d 606) (2017) ("'There is . . . no exhaustion requirement when . . . the (plaintiff) challenges the constitutionality of (a statute) on its face.'" (quoting King v. City of Bainbridge, 272 Ga. 427, 428 (531 SE2d 350) (2000)). Accordingly, the plaintiffs' facial constitutional challenges survive the administrative exhaustion requirement. We note, however, that the trial court's order, which was prepared by one of the attorneys for the plaintiffs, expressly and broadly ruled that the Registry statutes and rules are unconstitutional "as applied to [the plaintiffs]" and addressed at least some as-applied constitutional questions, including the insufficiency of the specific notices sent to the plaintiffs and the lack of diligence exhibited by Frazier in her investigation. Those as-applied challenges should instead have been dismissed by the superior court due to the plaintiffs' failure to exhaust their available administrative remedies. See United Cerebral Palsy, 298 Ga. at 786-787.[8]

4.    The only claims left for our consideration are the plaintiffs' facial constitutional challenges to the Registry statutes as enforced by Crittenden and

---

[8]    Although OCGA § 50-13-10 (a) says that "[a] declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule, waiver, or variance in question[,]" it does not give the plaintiffs a way around the exhaustion requirement because, as explained in Division 2 above, OCGA § 50-13-10 does not apply in this case. See George, 250 Ga. at 493.

Frazier, and these claims too cannot be properly addressed on the merits.

Related to the doctrine that those seeking judicial review must first exhaust their available administrative remedies is the doctrine that a superior court must not usurp an ongoing administrative proceeding by issuing declaratory or injunctive relief. Simply put, "Georgia courts will not enjoin administrative proceedings in progress or grant declaratory relief concerning a constitutional question which could be raised on appeal from the administrative decision." Ledford, 253 Ga. at 717.

This doctrine reflects the "'grave concern [about] the possible disruption of administrative procedures if courts, including this court on appeal, commence exercising jurisdiction to enjoin administrative proceedings already in progress and to issue declaratory judgments as to decisions about to be made by administrative tribunals.'" George, 250 Ga. at 492 (quoting Flint River Mills v. Henry, 234 Ga. 385, 386-387 (216 SE2d 895) (1975)).

> [A]n action for declaratory judgment will not be entertained where the rights of the parties have already accrued and the plaintiff faces no risk of taking future undirected action. This rule is particularly applicable where the rights of the parties have accrued and those rights are actually in the process of being adjudicated by another tribunal. . . . [And] [w]here a statute provides a party with a means of review by an administrative agency, such procedure is generally

14

an adequate remedy at law so as to preclude the grant of equitable relief.

Id. (citations and punctuation omitted). See also State Health Planning Agency v. Coastal Empire Rehab. Hosp., 261 Ga. 832, 833 (412 SE2d 532) (1992) (explaining that a declaratory judgment made while an administrative proceeding is pending addressing the same claim "would be, in effect, an advisory opinion").

Unlike the exhaustion requirement, the prohibition on interfering with or circumventing a pending administrative proceeding by taking the case to superior court applies to *all* claims that would disrupt the ongoing administrative process, including facial constitutional challenges to statutes and rules like the ones the plaintiffs assert. Although an administrative agency cannot declare laws to be unconstitutional, the agency may take account of constitutional considerations in deciding whether and how to enforce challenged statutes and rules and what the parties' rights are under them, and if the challenger remains aggrieved after the agency renders its final decision, judicial review is then normally available. See, e.g., George, 250 Ga. at 492. Allowing the challenger to obtain a judicial decision on the constitutionality of the law

outside of the ongoing administrative process would improperly intrude upon that process. See id. at 491-492.

In this case, the plaintiffs had each requested a hearing before the ALJ to challenge their listing on the Registry, and they had been given a hearing date, so their administrative proceedings were in progress. See Ledford, 253 Ga. at 717 ("[T]he administrative hearing came to be 'in progress' within the meaning of George . . . , when the plaintiffs were served with a notice of the hearing."). Consequently, the plaintiffs were not permitted to circumvent their pending administrative proceedings by raising their facial constitutional challenges in an independent superior court proceeding.[9]

5.    Having reviewed the record, we can understand why the plaintiffs were so upset about the way in which their names came to be put on the Child

---

[9] The plaintiffs argue that we should not apply this doctrine to them because this Court did not apply it to the appellee in State v. Jackson, 269 Ga. 308 (496 SE2d 912) (1998). In that case, Jackson filed a petition in the superior court seeking a declaratory judgment that a prior version of the Registry statutes was unconstitutional and seeking to enjoin the pending administrative proceeding he had initiated to challenge his listing on the Registry. See id. at 308-309. The Court addressed the merits of Jackson's constitutional claims without any mention of what effect the pending administrative proceeding should have had on his challenge in the superior court (or any mention of exhausting administrative remedies). A decision of this Court obviously is not precedent for a point it does not actually address and resolve. Whether Jackson's petition should have been dismissed on an administrative procedure ground is a "question[ ] which merely lurk[s] in the record . . . [and is] not to be considered as having been so decided as to constitute precedent[]." Coon v. The Med. Center, Inc., 300 Ga. 722, 732 (797 SE2d 828) (2017) (citation and punctuation omitted).

16

Abuse Registry and why they wanted to seek prompt relief in the superior court. But having initiated the administrative process available to challenge their listings — the process they were required to use to assert any as-applied constitutional challenges — it is clear under this Court's precedents that they could not jump off that path and head straight to court, even with facial constitutional challenges, nor could they sue the State or its officials as officials. Because every component of the plaintiffs' case should have been dismissed by the superior court on at least one of the grounds discussed above, we reverse that court's judgment to the contrary and vacate the judgment to the extent it addressed the merits, granted the plaintiffs injunctive relief, and declared the Registry statutes and rules to be unconstitutional. The trial court should not have addressed the constitutionality of the Registry statutes and rules, and we express no opinion on those questions in this case.[10] The case is remanded with

[10] We note that while this appeal was pending, we addressed and rejected the argument that the Registry statutes violate the constitutional requirement of separation of powers by allowing DFCS investigators to decide, based upon a preponderance of the evidence, if child abuse has occurred. See Ga. Dept. of Human Svcs. v. Steiner, 303 Ga. 890 (815 SE2d 883) (2018). Unlike the plaintiffs here, after Steiner's name was added to the Registry, he followed through with his hearing before an ALJ, raising his as-applied and facial constitutional claims in that proceeding, and then appealed the administrative decision to the superior court and then to this Court. See 303 Ga. at 893-894.

17

direction to the superior court to dismiss it.[11]

Judgment reversed in part and vacated in part, and case remanded with direction.  Melton, C. J., Benham, Hunstein, Blackwell, Boggs, and Peterson, JJ., concur.

---

[11] It is not clear on what basis the ALJ dismissed the plaintiffs' administrative proceedings, and we express no opinion as to whether those proceedings can be reopened or reinitiated at this point.

Decided September 10, 2018.

OCGA § 49-5-183; constitutional question. Dougherty Superior Court. Before Judge Gray, Senior Judge.

Christopher M. Carr, Attorney General, Annette M. Cowart, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Penny Hannah, Jameson B. Bilsborrow, Assistant Attorneys General, Sarah Hawkins Warren, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General, for appellants.

McCollum, Rawlins, Cauley & Parrott, Charles A. Ferenchick; Gilbert J. Murrah, for appellees.