A02A2173. IN THE INTEREST OF B. N. S., a child.
(578 SE2d 242)

SMITH, Chief Judge.

The mother of B. N. S. appeals from the juvenile court's order terminating her parental rights, enumerating only the insufficiency of the evidence to support the termination. We find no error and affirm.

The decision to terminate parental rights is a two-step process. First, the juvenile court must determine whether clear and convincing evidence exists of parental misconduct or inability. If such evidence does exist, then the court must consider whether termination of the parent's rights is in the best interest of the child, considering

---

the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including her need for a secure and stable home. OCGA § 15-11-94 (a), (b).

Parental misconduct or inability is demonstrated by showing that the criteria listed in OCGA § 15-11-94 (b) (4) (A) have been met. These criteria are: (i) that the child is deprived; (ii) that lack of proper parental care or control is the cause of the child's deprivation; (iii) that this cause of the child's deprivation is likely to continue or will not likely be remedied; and (iv) that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. Id. These same factors may also support a finding that terminating the parent's rights is in the child's best interest. *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). When this court reviews a decision terminating parental rights, we construe the evidence most favorably to the appellee. *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996). On appeal, the standard of review is whether, viewing the evidence in this light, a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should be terminated. We must defer to the trial court's findings of fact unless this standard is not met. *In the Interest of J. O. L.*, 235 Ga. App. 856 (510 SE2d 613) (1998).

The record shows that in this case, all four criteria were satisfied. The mother of B. N. S. was arrested in November 2000 for hindering the apprehension of a criminal. While she was in jail for four days, one-year-old B. N. S. was in the custody of her sister, who at that time was sixteen. The mother pled guilty to this offense and received a 12-month probated sentence. She was again arrested in December 2000 on charges of cocaine possession, giving a false name to police, no proof of insurance, and driving with a suspended license. When jailed, the mother left 15-month-old B. N. S. in the care of her father, a convicted child molester, and her now 17-year-old sister. The child's grandfather later abandoned B. N. S., leaving her with his girlfriend. The girlfriend notified the Bartow County Department of Family and Children Services when she was unable to care for the child, and the Department obtained emergency custody on January 10, 2001.

A deprivation hearing was held on January 29, 2001, and the juvenile court entered a consent order finding B. N. S. deprived and awarding temporary legal custody to the Department. This order was extended in January 2002, and neither order was appealed. The first factor was therefore satisfied. The Department developed a case plan for the mother, requiring her to comply with certain goals in order to be reunified with her daughter. The case plan required the mother to complete a psychological evaluation and follow the psychologist's rec-

ommendations; remain drug and alcohol free; complete a drug and alcohol assessment and submit to random screens; obtain and maintain appropriate housing; obtain and maintain appropriate employment; successfully complete a parenting course and demonstrate learned skills; maintain regular contact with B. N. S.; cooperate with the Department; and clear up all remaining criminal charges.

The mother pled guilty to the latest criminal charges and was sentenced under the First Offender Act to five years probation. She was arrested again on July 19, 2001, for felony possession of cocaine, possession of marijuana, possession of methamphetamines, giving a false name to an officer, and violation of probation. She pled guilty and was sentenced to serve nine months. On December 14, 2001, the mother surrendered her parental rights following a mediation, but within ten days, she withdrew her surrender. On January 17, 2002, the Department filed a petition to terminate her rights.

The mother's own testimony at the hearing demonstrates that she was the cause of the child's deprivation. She did not comply with a single case plan goal. She testified she had been incarcerated since July 19, 2001, and she would be released in April. She would then be on probation for eight years, including six months of intensive probation. She admitted that she was a drug addict and that she had not succeeded in rehabilitating herself. Although she testified that she understood her case plan goals, she admitted she had not complied with any of them. She testified that she obtained drugs from her mother, who was also an addict. She sold drugs at one time. She never obtained a drug and alcohol assessment, and she failed drug screens. She did not obtain a psychological evaluation. During the time the mother was out of prison, she did not have appropriate housing or employment. She did not complete parenting classes. Although she scheduled three visits with her daughter, she missed two of the three because she was "strung out on drugs." She did not see B. N. S. from March 16, 2001, until December 16, 2001, when the child's foster mother brought her to visit. She acknowledged that she had also failed to maintain contact with the Department. While she was using drugs, the Department lost contact with her for approximately two months. Finally, she did not clear up her remaining criminal charges, as required by the case plan. In fact, her probation was revoked, and she was charged with other crimes. The second factor was satisfied by this evidence.

In considering the third factor, whether the deprivation is likely to continue, the juvenile court may look at the past actions of the parent. *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001). The court is not required to reunite mother and child to obtain evidence regarding the continuation of deprivation. Id.; *In the Interest of D. W. A.*, 253 Ga. App. 346, 348 (559 SE2d 100) (2002).

Given the mother's history of criminal behavior and her admitted drug addiction, as well as her inability or unwillingness to meet her case plan goals, the juvenile court was authorized to find that B. N. S.'s deprivation would continue if she were returned to her mother. The third factor was satisfied.

A caseworker testified that B. N. S. was thriving in her foster care placement and was "very bonded" with her foster parents, who had two adopted children and one other foster child, and who had expressed the desire to adopt B. N. S. The caseworker believed it would be harmful to the child to remove her from her foster family. This assessment was confirmed by a supervisor with the Department's foster care unit. The child's guardian ad litem recommended that the mother's parental rights be terminated. This evidence satisfied the fourth factor.

Notwithstanding this evidence, and acknowledging that it would not be in B. N. S.'s best interest to remove her from her foster family, the mother asked the juvenile court, as she asks this court now, to give her a "second chance." It is obvious from the record that the juvenile court judge was sympathetic to the mother's circumstances, her youth, and the tragic circumstances under which she grew up. But the juvenile court recognized, as it was bound to do, that reunification with her mother was not in the best interest of B. N. S. because of the mother's inability to parent B. N. S. properly. It is well established that "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation and footnote omitted.) *In the Interest of A. L. E.*, 248 Ga. App. 213, 219 (2) (546 SE2d 319) (2001). We conclude that the evidence presented amply authorized the juvenile court to terminate the mother's parental rights.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED FEBRUARY 12, 2003.

*Ann C. Stahl*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Neel & Smith, Barry S. Haney, Mary F. McCord, Stephanie B. Hope*, for appellee.