606 S.E.2d 655 (2004)
270 Ga. App. 466
In the Interest of S.R.B., a child.
No. A04A1017.
Court of Appeals of Georgia.
November 16, 2004.
*656 John P. Rivers, Brunswick, for appellant.
R. Joseph Hammill, Brunswick, for appellee.
MIKELL, Judge.
Appellant father appeals the termination of his parental rights to his three-year-old son, S.R.B. The record shows that in August 2000, appellant father was charged with aggravated sodomy, kidnapping, and child molestation resulting from an incident involving a teenage boy. S.R.B. was born approximately five months later, on February 1, 2001. In April of that year, appellant entered a guilty plea to two counts of child molestation. He is currently serving his sentence at a state prison in Macon.
Appellant father and appellee mother were divorced on April 18, 2001. Appellee mother became fearful for her son's safety after appellant admitted his guilt to her and told her that he had "a very deep-seated problem" which he doubted "could ever be fixed." Appellee mother also learned that appellant had offered to give their nephew money if the young man would expose his buttocks. Appellee mother filed a petition to terminate appellant's parental rights on November 18, 2002. Following a hearing at which appellant was represented by counsel, the juvenile court entered an order terminating appellant father's parental rights. He appeals, arguing that the court erred in denying his request to be transported to Glynn County for the hearing, in refusing to dismiss the petition, in overruling an objection during the examination of an expert witness, and in terminating his parental rights. We affirm the judgment of the juvenile court.
1. First, appellant's argument that the juvenile court erred by refusing his request to be transported from the state prison in Macon to Glynn County for the hearing is without merit.
Due process in this case requires that, prior to the termination of his parental rights, the father receive notice and an opportunity to be heard. See, e.g., Nix v. Long Mountain Resources, [262 Ga. 506, 509(3), 422 S.E.2d 195 (1992)]. There can be no question that the father received notification of the termination hearing because he filed his motion [to be returned to Glynn County], in which he explicitly referenced the hearing to be held several weeks later. The father also received an adequate opportunity to be heard through his counsel, who represented him during the hearing. "Due to his own inability to conform to the law, he was unable to avail himself of the opportunity to appear in person; however, it is undisputed that he was represented in all the parental termination proceedings by counsel who appeared in his stead." In the Interest of M.G.F., [222 Ga.App. 816, 817, 476 S.E.2d 100 (1996)]. "We know of no constitutional entitlement mandating the father's right to appear personally at the termination hearing." Id. at 818 [476 S.E.2d 100].
(Punctuation omitted.) In the Interest of C.C.E., 246 Ga.App. 584, 584-585, 540 S.E.2d 704 (2000). Accordingly, the juvenile court did not err in denying the appellant's motion.
2. In two related errors, appellant father argues that the court erred in denying his request to dismiss the appellee's petition for failure to comply with OCGA § 15-11-95 and for insufficiency of process. Again, we find no error.
OCGA § 15-11-95(b) requires that the petition be endorsed by the court with a finding that the filing of the petition is in the best interest of the child. Subsection (c) of the statute requires that the petition state clearly that an order for termination of parental rights is requested and set forth the necessary facts in support of the petition. Appellant *657 father contends that the petition failed to satisfy these requirements. However, we agree with the juvenile court that to the extent the defects alleged by appellant existed, they were procedural in nature, could be amended, and did not require dismissal of the petition. Furthermore, the document, titled "Petition to Terminate Parental Rights," repeatedly requested that appellant father's parental rights be terminated, provided a factual basis for the action sought, and asked the court to find that such action was in the best interest of the child.
Likewise, the court did not err in finding that the summons served on appellant father was in substantial compliance with the requirements of OCGA § 15-11-96. Appellant father argues that service of process was insufficient because the summons did not contain a statement to the effect that the hearing was for the purpose of terminating parental rights, as required by subsection (b) of that Code section. However, it is clear from the language of the petition, the personal service on appellant, the court's appointment of counsel for appellant, and the pleadings filed by appellant and his counsel that the purpose of appellee's petition was known to appellant. "The fundamental idea of due process is notice and an opportunity to be heard." (Punctuation omitted.) In the Interest of D.A.P., 234 Ga.App. 257, 258(1), 506 S.E.2d 438 (1998), citing Nix, supra at 509, 422 S.E.2d 195. Here, the appellant father had both.
3. Next, appellant argues that the juvenile court erred in overruling his counsel's objection to a hypothetical question propounded by the appellee to an expert witness. At trial, Tod Lynch-Stanley, a licensed social worker who worked extensively in the treatment of sex offenders, was certified without objection as an expert in the field of sexual molestation and sexually violent crimes. Lynch-Stanley testified in general terms about the treatment of child molesters. Appellant assigns error to the court's rulings on the following questions by appellee regarding how the witness would determine a child molester's level of sexual compulsion: "Now, hypothetically speaking, if there is a history of inappropriate behavior or remarks made to people, or trouble that person has been in, in the past, how does that figure in your equation?" In response to appellant's objection that the question introduced or assumed facts not in evidence, appellee rephrased the question as follows: "Okay, assume, again, assume, for the purpose of evaluation in your scenario that you laid out, that the person had come onto another person, another young person, in the past." Appellant objected again, and the court responded, "I'm going to let it in because I am also the finder of facts, and I'll keep it in mind, the amount of weight to attach to it."
We find no reversible error. First, appellant did not object during the expert witness's lengthy testimony about the evaluation and treatment of child molesters. Lynch-Stanley's answer to the objected-to questions merely expanded on his earlier description of the treatment of sex offenders generally. Further, even if the testimony was not proper, "[d]uring a nonjury trial, it is presumed that the court is able to sift the wheat from the chaff and select only the legal evidence." (Punctuation and footnote omitted.) In the Interest of C.G.B., 242 Ga.App. 705, 711(4), 531 S.E.2d 107 (2000).
4. Finally, appellant contends that the trial court erred in terminating his parental rights. "On appeal, this [C]ourt neither weighs the evidence nor determines the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met." (Citation omitted.) In the Interest of R.U., 239 Ga.App. 573, 577(1), 521 S.E.2d 610 (1999).
OCGA § 15-11-94(a) sets out a two-part procedure for termination cases. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in subsection (b) of the statute. Parental misconduct is found when: (1) the children are deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. *658 OCGA § 15-11-94(b)(4)(A) (i)-(iv). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, "[it] shall then consider whether termination of parental rights is in the best interest of the [children], after considering the physical, mental, emotional, and moral condition and needs of the [children] ..., including the need for a secure and stable home." OCGA § 15-11-94(a). See In the Interest of D.L.D., 248 Ga.App. 149, 152, 546 S.E.2d 11 (2001).
Bearing the above standard in mind, we affirm the juvenile court's order. It is undisputed that appellant was incarcerated for sexually abusing a young man. In fact, appellant admitted that he forced the boy to perform oral sex on him, attempted to rape the boy, and forced the boy into his car at knifepoint. There was also evidence that appellant made inappropriate sexual advances toward other young men, including his nephew. In her petition, the appellee alleged that appellant had a long history of molesting boys; that while employed as a substitute teacher at a high school, appellant was arrested for making sexual advances toward a male student; and that appellant's employment at a hotel was terminated after a guest complained that he had made inappropriate sexual comments to the guest's son. Appellant admitted those allegations in his answer.[1] Significantly, the appellee testified that appellant admitted to her that "this was a compulsion he had and he felt like he was going to be stuck with it for the rest of his life." There was also evidence that appellant had never met his son or had any contact with him and that he provided no support for the child.[2] The guardian ad litem recommended that appellant's parental rights be terminated.
Appellant argues that his incarceration should not compel the termination of his parental rights. However, under OCGA § 15-11-94(b)(4)(B)(iii), the juvenile court shall consider the conviction and incarceration of a parent to the extent that it has had "a demonstrable negative effect on the quality of the parent-child relationship." Clearly, the fact that appellant has had no contact with his son is a demonstrable negative effect. Further, "[t]hough a parent's incarceration does not always compel the termination of parental rights, it can support a termination when there are sufficient aggravating circumstances present." (Punctuation and footnote omitted.) In the Interest of D.M.W., 266 Ga.App. 456, 458-459(2), 597 S.E.2d 531 (2004). The fact that appellant was convicted of sexually molesting a boy is certainly a circumstance to be considered in determining his parental rights to his young son. Further, OCGA § 15-11-94(b)(4)(B)(iv) mandates that the court consider "[e]gregious conduct or evidence of past egregious conduct of the parent... toward another child of a physically, emotionally, or sexually cruel or abusive nature" in determining whether the child is without proper parental care or control.
After considering the record, we find that all of the requirements for termination have been met. Accordingly, we affirm the juvenile court's order.
Judgment affirmed.
BLACKBURN, P.J., and BARNES, J., concur.
NOTES
[1] Further, at the termination hearing, appellant's mother alluded to the allegation involving the high school student.
[2] We note that under the divorce decree, appellant was not legally required to provide child support until after his release from prison.