612 S.E.2d 612 (2005)
272 Ga. App. 451
In the Interest of M.E.M., et al., Children.
No. A05A0802.
Court of Appeals of Georgia.
March 24, 2005.
*613 Franklin McCrea, Alma, for Appellant.
John Staggs, Jr., Waycross, Thurbert Baker, Attorney General, Shalen Nelson, Senior Assistant Attorney General, Charissa Ruel, Assistant Attorney General, for Appellee.
BLACKBURN, Presiding Judge.
Following the juvenile court's termination of her parental rights, appellant, the natural mother of M.E.M., Jr. and M.E.M. I, appeals, arguing that the trial court erred in terminating her rights to her children because the Department of Family and Children Services ("DFACS") failed to present clear and convincing evidence that the children lacked proper parental care and control, and failed to present sufficient evidence that termination was in the children's best interests. For the reasons set forth below, we affirm.

*614 The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of K.S.W.[1]
Viewed in a light most favorable to the juvenile court's disposition of the case, the record shows that DFACS became involved with M.E.M., Jr. and M.E.M. I in May 2003 when it learned that they were not receiving proper parental care, control, and supervision.[2] At the time, appellant was living in a local motel with a male who was a drug abuser and leaving her children in the care of the maternal grandmother, whose husband had been charged in Michigan with the rape and sodomy of appellant's sister.
On May 13, 2003, appellant signed a written surrender of parental rights to the children in favor of the maternal grandparents. On May 20, 2003, DFACS filed a deprivation complaint and the juvenile court conducted a 72-hour hearing which began the same day. Appellant was present at the hearing.
On May 23, 2003, DFACS filed a petition alleging that the children were deprived. On May 28, 2003, the juvenile court entered an order finding probable cause of deprivation and placing temporary legal custody of the children with DFACS. Appellant did not appeal this order.
On July 15, 2003, the juvenile court held an adjudicatory hearing on DFACS's deprivation petition. Following the hearing, the court issued an order finding by clear and convincing evidence that the children were presently deprived and placing their legal and physical custody with DFACS for a period of 12 months. This order was not appealed.
DFACS developed a reunification plan which appellant signed on August 18, 2003. The plan states that appellant had relinquished her parental rights to the children to her parents but that DFACS did not find placement with the maternal grandparents suitable because of their extensive history. Under the plan, appellant was to: obtain and maintain a source of income and support, as well as stable, clean and safe housing, for her children; obtain childcare services or assure proper supervision of the children at all times; and cooperate with all service providers. The juvenile court reviewed the reunification case plan and incorporated its goals in a supplemental order of September 16, 2003.
DFACS filed a motion for a permanency plan hearing and nonreunification on January 5, 2004. A hearing on the motion was held on February 12, 2004. Appellant was present and represented by counsel at this hearing. In an order dated March 18, 2004, the juvenile court found that appellant had failed to comply with the DFACS case plan in that she had not: maintained stable housing; attended all of her scheduled visitation opportunities with her children; or maintained stable employment. The court also noted that the surrender of parental rights which appellant signed in May 2003 was admitted into the record without objection. The court found that the children continued to be deprived and approved the nonreunification permanency plan, further finding that any continued efforts to reunify the children with the parents were "no longer appropriate nor in the best interest of the ... children and should therefore be immediately terminated." Appellant did not appeal this order.
On June 7, 2004, following a hearing on DFACS's motion to extend custody, the juvenile court issued an order in which it found that the children continued to be deprived and approved nonreunification with placement *615 of the children with a relative. Appellant failed to appeal this order.
On June 11, 2004, as the result of its inability to find any appropriate relative placement for the children, DFACS filed a motion for a permanency plan hearing and nonreunification. DFACS filed a petition to terminate appellant's parental rights to the children on August 16, 2004. A hearing on DFACS's termination petition and permanency plan was held on October 26, 2004; appellant was present at the hearing and represented by counsel. On November 2, 2004, the juvenile court entered an order terminating appellant's parental rights in her children. This appeal followed.
Appellant first contends that the trial court erred in terminating her rights in her children because DFACS failed to present clear and convincing evidence that the children lacked proper parental care and control.
A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
In the Interest of J.J.[3]
Appellant does not, and cannot, challenge the first finding of parental misconduct or inability; that is, whether M.E.M., Jr. and M.E.M. I are deprived. The juvenile court entered an order on July 15, 2003, finding that the children were presently deprived; in subsequent orders of March 18, 2004, and June 7, 2004, the juvenile court found that the children continued to be deprived. Having failed to appeal these orders, appellant is bound by the juvenile court's finding of deprivation. In the Interest of J.G.J.P.[4]
The evidence also supported the juvenile court's determination that the children's deprivation was caused by a lack of proper parental care or control by appellant. In cases
where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; [t]o provide for the care and support of the child as required by law or judicial decree; and [t]o comply with a court ordered plan designed to reunite the child with the parent or parents.
OCGA § 15-11-94(b)(4)(C)(i)-(iii).
Viewed in a light most favorable to the juvenile court's findings, the record shows that appellant abandoned her children, leaving them with her mother and her mother's husband, who has been charged with sex crimes. For well over a year, appellant failed to maintain any meaningful or consistent contact with either DFACS or the children. Since the children were placed in the care of DFACS, appellant has moved at least nine times and, at the time of the termination hearing, DFACS had no knowledge of where she was living. She was, in fact, living in a one-bedroom apartment with a boyfriend. Appellant last visited her children, who are special needs children requiring significant attention and care, over three months before the termination hearing. Appellant has made no effort to provide any financial support for her children. Appellant has also made no effort to comply with court-ordered reunification directives. Finally, appellant *616 executed a surrender of her parental rights in the children. Such an action "does not demonstrate a commitment to parenting." In the Interest of B.R.W.[5] Taken together, these facts provide sufficient evidence that appellant caused her children's deprivation.
The evidence adduced at the termination hearing also supports the juvenile court's determination that the children's deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Punctuation omitted.) In the Interest of T.G.[6] Appellant's abandonment of her children, and her failure to visit her children, to maintain a relationship with them, to provide for their support, and to comply with the directives of her case plan all indicate that the conditions of deprivation are likely to continue.
As to the fourth factor, that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children,
the same circumstances that authorized the juvenile court's determination that these children were deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children.
In the Interest of T.G., supra at 283-284, 603 S.E.2d 764. As set forth above, appellant has failed to maintain meaningful and consistent contact with the children or to support them, and has no stable home. In addition, a DFACS employee testified at the hearing on the petition for termination of parental rights that the children are in need of stability and permanence in their lives, but that appellant is incapable of providing them with either. On the other hand, the children, who have developmental problems, are making good progress in school. The foster parents, with whom the children have developed close bonds, have expressed a desire to adopt the children and provide for their needs in a stable environment. This evidence supported the juvenile court's finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children. Cf. In the Interest of A.T.[7] (holding that fourth factor was not satisfied where there was no testimony that remaining in foster care as opposed to being permanently adopted would have adverse effect on children).
Having found that the four factors in the first step of the analysis exist, the juvenile court proceeded to the second step of the analysis and found that termination of appellant's parental rights is in the best interests of the children. Appellant contests this finding, arguing that her parental rights should not have been terminated because DFACS failed to present sufficient evidence that termination was in the children's best interest. We disagree.
"The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the children's best interests." In the Interest of T.G., supra at 284. 603 S.E.2d 764.. As the juvenile court noted, the "children are in need of stability and permanence in their living environment and daily lives in order to adequately mature and develop emotionally." Appellant has demonstrated that she cannot provide this stability and permanence. On the other hand, as noted above, "the children have developed strong personal bonds with their foster care parents and are happy and well adjusted in their current placements." The foster parents want to adopt the children. As the juvenile court found, "a termination of parental rights will enable the children to achieve a more stable home life through adoption ... *617 [and] will have a beneficial effect on the children in that it will ameliorate the serious physical, mental, and emotional harm which the children have suffered, and which they would otherwise continue to suffer." These findings provide sufficient evidence that the termination of appellant's parental rights was in the children's best interests.
Judgment affirmed.
MILLER and BERNES, JJ., concur.
NOTES
[1] In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] The putative father of M.E.M., Jr. is Gualupe Morales, who resides in Mexico; the putative father of M.E.M. I is Brian Doest, who is the appellant's uncle.
[3] In the Interest of J.J., 259 Ga.App. 159, 161, 575 S.E.2d 921 (2003).
[4] In the Interest of J.G.J.P., 268 Ga.App. 614, 617(1), 602 S.E.2d 320 (2004).
[5] In the Interest of B.R.W., 242 Ga.App. 232, 237(2), 530 S.E.2d 5 (2000).
[6] In the Interest of T.G., 269 Ga.App. 278, 283, 603 S.E.2d 764 (2004).
[7] In the Interest of A.T., 271 Ga.App. 470, 610 S.E.2d 121 (2005).