A06A0331. IN THE INTEREST OF A. R. A. S., a child.
(629 SE2d 822)

ELLINGTON, Judge.

The Juvenile Court of Murray County terminated the parental rights of the mother and legal father of five-year-old A. R. A. S. The child's mother appeals, contending the trial court erred in permitting the petitioner to call her as an adverse witness pursuant to OCGA § 24-9-81 and challenging the sufficiency of the evidence. Finding no error, we affirm.

1. The mother contends that, by permitting the petitioner to call her as an adverse witness, subject to cross-examination, the trial court deprived her of due process in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia. The mother also argues in terms of constitutional liberty and privacy interests. Although the mother objected at trial to being called as an adverse witness, the transcript shows that the constitutional challenges were not clearly raised in the trial court and distinctly ruled upon;[1] accordingly, we need not transfer this case to the Supreme Court of Georgia, and we do not address the mother's constitutional arguments here. *Senase v. State*, 258 Ga. 592 (372 SE2d 813) (1988); *In the Interest of A. A.*, 253 Ga. App. 858, 862 (3) (560 SE2d 763) (2002).

We note that OCGA § 24-9-81 explicitly authorizes litigants in all civil cases to call their opponents for cross-examination,[2] as the mother concedes. It is well settled that parental termination actions are civil cases under Georgia law. *In the Interest of A. M. R.*, 230 Ga.

---

[1] The mother's trial counsel framed the objection as follows: "I object to the Department calling [the mother] for purposes of cross-examination to terminate her parental rights. It deprives her of the procedure of due process." The juvenile court overruled the objection without explanation.

[2] "In the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party . . . a witness, with the privilege of subjecting such witness to a thorough and sifting examination and with the further privilege of impeachment, as if the witness had testified in his or her own behalf and were being cross-examined." OCGA § 24-9-81.

App. 133, 136 (2) (495 SE2d 615) (1998). See also *Quire v. Clayton County Dept. of Family &c. Svcs.*, 242 Ga. 85, 87 (249 SE2d 538) (1978) (termination of parental rights does not fall in "the quasi-criminal area"); *In the Interest of A. H. P.*, 232 Ga. App. 330, 334 (2) (500 SE2d 418) (1998) (termination of parental rights is "more civil in nature than criminal") (citations and punctuation omitted). Furthermore, a child's parent is deemed a "party" to proceedings involving her child. *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406, 410-411 (229 SE2d 66) (1976). Thus, on its face OCGA § 24-9-81 applies to termination cases.

Despite the plain terms of the Code section, however, the mother argues that in a case to terminate parental rights the petitioner should not be permitted to call a parent to testify on cross-examination until the petitioner first shows clear and convincing evidence of parental misconduct or inability through the testimony of other witnesses. As we have often observed, "no judicial determination has more drastic significance than permanently severing a parent-child relationship." (Citation and punctuation omitted.) *In the Interest of T. P.*, 270 Ga. App. 700, 707 (4) (608 SE2d 43) (2004).

> The United States Supreme Court has held that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment and that state intervention to terminate the relationship between a parent and child must consequently be accompanied by procedures meeting the requisites of the due-process clause.

(Citations omitted.) *In the Interest of M. S.*, 178 Ga. App. 380, 381 (343 SE2d 152) (1986). As a result, trial courts apply a heightened standard of proof, the clear and convincing evidence standard, and a parent facing termination of parental rights is afforded some of the protections to which criminal defendants are entitled. OCGA § 15-11-94; *In the Interest of A. H. P.*, 232 Ga. App. at 334. For example, a parent has a right to confront the witnesses on whose testimony the petitioner's case is based. *In the Interest of B. G.*, 225 Ga. App. 492, 493 (1) (484 SE2d 293) (1997); *In the Interest of M. S.*, 178 Ga. App. at 381; OCGA § 15-11-7 (a). In addition, an indigent parent has a statutory right to effective legal representation. *In the Interest of A. H. P.*, 232 Ga. App. at 334 (2); OCGA § 15-11-98 (b). But "[n]o state or federal constitutional right to counsel is involved because a parental termination action is a civil matter, not a criminal proceeding." (Citations omitted.) *In the Interest of A. M. R.*, 230 Ga. App. at 136 (2).

One result of this classification as a civil proceeding is that, if a parent is called as a witness in a termination proceeding and that

parent refuses to testify, even to avoid self-incrimination in a pending criminal proceeding, the trial court is authorized to draw a negative inference from the parent's silence and may infer that the parent's truthful testimony would help the petitioner's case. *In the Interest of M. V.*, 253 Ga. App. 669, 671-672 (560 SE2d 125) (2002). See also *In the Interest of S. B.*, 242 Ga. App. 184, 186-187 (1) (528 SE2d 278) (2000) (negative inference drawn from mother's refusal to testify in a deprivation case). It follows that a parent in a termination case does not share a criminal defendant's right not to be cross-examined unless and until the defendant opts, after the prosecution's case-in-chief, to exercise his right to testify in his own behalf. See Jack Goger, Daniel's Georgia Criminal Trial Practice, § 21-3 (2006 ed.).

It is fundamental that matters of public policy are entrusted to the General Assembly, not this Court;[3] we consider only whether the juvenile court committed an error of law in allowing the Department to call the mother for purposes of cross-examination. Finding no authority to exempt termination proceedings from OCGA § 24-9-81, we can only conclude that the trial court ruled correctly.

2. The mother contends the juvenile court's findings that the child's deprivation was due to parental misconduct or inability that was likely to continue and that termination of her parental rights was in the best interest of the child were not supported by clear and convincing evidence.

> On appeal, we must determine whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather,

---

[3] See *Sims v. State*, 221 Ga. 190, 204 (5) (c) (144 SE2d 103) (1965), rev'd on other grounds, 385 U. S. 538 (87 SC 639, 17 LE2d 593) (1967) ("Legislatures alone determine the wisdom of laws, and courts, despite their belief that the law is unwise, nevertheless are bound by the Constitution to confine their considerations of such laws to their constitutionality alone."); *Pearle Optical of Monroeville v. State Bd. of Examiners in Optometry*, 219 Ga. 364, 373 (2) (133 SE2d 374) (1963) ("It is the prerogative of the judiciary to determine what the law is, and the responsibility of the legislature to declare what the law shall be.") (citation omitted); *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) ("[T]he legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional."); *Jacobs v. State of Ga.*, 200 Ga. 440, 445 (37 SE2d 187) (1946) (the appellate courts' authority extends only to the correction of errors of law; they have no legislative powers or functions); *Garmon v. Health Group of Atlanta*, 183 Ga. App. 587, 589-590 (1) (359 SE2d 450) (1987) (matters of public policy are within the legislative arena, and in matters of legislation the supreme authority is in the legislature).

we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Citation and footnote omitted.) *In the Interest of C. R. G.*, 272 Ga. App. 161, 161-162 (611 SE2d 784) (2005).

The Georgia Code sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-94 (a). Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child, "after considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a).

Viewed in the light most favorable to the juvenile court's judgment, the record shows that, when the child was barely one month old, the mother ended her relationship with the child's father, who had abused and threatened her, and essentially abandoned the child to the care of friends. A year later, the mother demanded the child be returned to her and sought help from law enforcement. The Georgia Department of Human Resources, by and through the Murray County Department of Family and Children Services, asked for custody to ensure the child's protection, and the child was placed in foster care on April 23, 2001. The friend who had been caring for the child filed a private deprivation action. Although the juvenile court declined to adjudicate the child deprived and dismissed the complaint, the court continued temporary custody; the child remained in foster care for the following year. The mother agreed to a reunification case plan, which required her, inter alia, to maintain contact with the Department and submit to drug screens. When the Department first asked her to take a drug screen, however, she "disappeared" and did not see the child again, or have any contact with the Department or the child's guardians, for three years. At the hearing on the termination petition, the mother explained her three-year absence from the child's life by saying that her abusive, drug-dealing boyfriend kept her in hiding and on the move.

In April 2002, the court awarded legal custody to the child's maternal great-aunt. Six months later, the Department discovered that the legal guardian had given the child to the child's father

without court approval and that the father was subsequently incarcerated. On October 17, 2002, the juvenile court adjudicated the child deprived. The initial deprivation finding was repeated in orders entered December 19, 2002, October 23, 2003, February 17, 2005, and April 21, 2005, which continued custody with the Department. The mother did not appeal these orders and is thus bound by the deprivation determination. *In the Interest of A. C. O.*, 269 Ga. App. 667, 669 (1) (605 SE2d 77) (2004).

As to the second factor, the juvenile court determined that, as to the mother, the child's deprivation was caused by the lack of proper parental care and control based on four statutory factors: (a) the mother's conviction of a felony and imprisonment therefor which has had a demonstrable negative effect on the quality of the parent-child relationship;[4] (b) the mother's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to develop and maintain a parental bond with the child in a meaningful, supportive manner;[5] (c) the mother's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to provide for the care and support of the child as required by law;[6] and (d) the mother's significant failure without justifiable cause for the year preceding the filing of the petition for termination of parental rights to comply with a court-ordered plan designed to reunite the child with the parents.[7] In addition, the court noted that the mother admittedly used drugs for a year while the child was in foster care and never obtained treatment for drug abuse.[8]

(a) *The Mother's Incarceration.* The record shows that the mother entered a guilty plea to possession of cocaine, a felony,[9] and was incarcerated from the beginning of 2005. After being completely out of contact with the Department and uninvolved in her daughter's life for three years, the mother contacted the Department and obtained a case plan in February 2005. The mother did not have any communications with the child and did not make any progress toward meeting her goals, however, until after she was released from confinement on June 10, 2005. The juvenile court was authorized to find

---

[4] OCGA § 15-11-94 (b) (4) (B) (iii).

[5] OCGA § 15-11-94 (b) (4) (C) (i).

[6] OCGA § 15-11-94 (b) (4) (C) (ii).

[7] OCGA § 15-11-94 (b) (4) (C) (iii).

[8] See OCGA § 15-11-94 (b) (4) (B) (ii) (parental inability may be shown by the parent's history of chronic unrehabilitated abuse of narcotic or dangerous drugs or controlled substances which has rendered the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child).

[9] See OCGA § 16-13-30 (c).

by clear and convincing evidence that the mother's imprisonment had a negative effect on the parent-child relationship, in that it further delayed the mother's overdue efforts to form a meaningful parent-child relationship. See *In the Interest of S. R. B.*, 270 Ga. App. 466, 470 (4) (606 SE2d 655) (2004) ("Clearly, the fact that [the mother] has had no contact with [her child] is a demonstrable negative effect.").

(b) *The Mother's Failure to Develop and Maintain a Parental Bond with the Child.* During the year before the Department filed the petition on May 27, 2005, the mother was in contact with the Department for only about the last quarter of that year, while she was incarcerated. During the year before the petition, the mother had no visits with the child, and there is no evidence she sent any cards or letters or made any telephone calls to the child. The juvenile court was authorized to find by clear and convincing evidence that the mother significantly failed without justifiable cause for the year preceding the filing of the petition for termination of parental rights to develop and maintain a parental bond with the child in a meaningful, supportive manner.

(c) *The Mother's Failure to Support the Child.* Georgia law requires a parent to financially support his or her child while the child is in foster care, even in the absence of a court order and even if unable to earn income. OCGA § 19-7-2 (general duty to support); *In the Interest of J. J.*, 259 Ga. App. 159, 162 (575 SE2d 921) (2003) ("A parent . . . has a statutory duty to support her children, with or without a court order.") (citations and punctuation omitted); *In the Interest of A. N. M.*, 238 Ga. App. 21, 26 (5) (517 SE2d 548) (1999) (disabled parent has a duty to support his child). During the year before the filing of the Department's petition, the mother admittedly failed to make a single payment for the child's support. The juvenile court's finding on this issue was supported by clear and convincing evidence.

(d) *The Mother's Failure to Comply with a Reunification Plan.* The mother's case plans required that she remain drug free, visit with the child, and financially support the child; the mother's failures in these areas are discussed above. In addition, the mother's case plans required her to maintain a stable home, to maintain stable employment, and to complete parenting classes. During the year before the filing of the petition, and far longer, the mother lived a nomadic lifestyle and lived "here, there, and yonder, or wherever [she and her boyfriend] could stay." The record contains no evidence that, during the year before the filing of the petition, the mother was ever employed. The mother never completed parenting classes. The mother freely admitted that she had completed none of the goals of her case plan but begged for a second chance based on her efforts *after* the filing of the petition to terminate her rights. The juvenile court was

authorized to find by clear and convincing evidence that the mother significantly failed without justifiable cause for the year preceding the filing of the petition for termination of parental rights to comply with a court-ordered reunification plan.

Based on all of the above, viewed in the light most favorable to the juvenile court's determination, a rational trier of fact could have found by clear and convincing evidence that the child's deprived status is caused by the mother's lack of proper parental care or control, the second factor. *In the Interest of M. E. M.*, 272 Ga. App. 451, 454 (612 SE2d 612) (2005); *In the Interest of D. M. W.*, 266 Ga. App. 456, 458-459 (2) (597 SE2d 531) (2004); *In the Interest of K. W.*, 262 Ga. App. 744, 746-747 (1) (b) (586 SE2d 423) (2003); *In the Interest of B. N. S.*, 259 Ga. App. 622, 623-624 (578 SE2d 242) (2003). See OCGA § 15-11-94 (b) (4) (A) (ii), (B), (C).

As to the third factor, a rational trier of fact could also have found by clear and convincing evidence that the cause of the deprivation is likely to continue because over the course of the child's lifetime the mother failed to develop and maintain a bond with the child and essentially abandoned the child to her fate. *In the Interest of M. E. M.*, 272 Ga. App. at 454-455; *In the Interest of B. N. S.*, 259 Ga. App. at 624-625.

> In addition to evidence of present parental misconduct or inability, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue. Such an inference is appropriate, since the juvenile court is not required to reunite [the child] with [her mother] in order to obtain current evidence of deprivation.

(Citations and punctuation omitted.) *In the Interest of E. C.*, 225 Ga. App. 12, 16 (482 SE2d 522) (1997). See also OCGA § 15-11-94 (b) (4) (A) (iii). "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of S. H.*, 251 Ga. App. 555, 558 (1) (b) (553 SE2d 849) (2001).

As to the fourth factor, that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child, the same circumstances that authorized the juvenile court's determination that the child was deprived due to lack of proper parental control or to parental inability and that such deprivation was likely to continue further provided clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. As set forth above, the mother has failed to develop a relationship with the child, to develop the means to support the child,

to secure an appropriate home environment, or to take the other steps necessary to fulfill a parent's role for the child. This evidence supported the juvenile court's finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. *In the Interest of J. S. T. S.*, 273 Ga. App. 221 (614 SE2d 863) (2005); *In the Interest of M. E. M.*, 272 Ga. App. at 455. "[I]t is well settled that children need permanence of home and emotional stability or they are likely to suffer serious emotional problems." (Citation omitted.) *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005). In addition, the foster parents, with whom the child has developed close bonds, have expressed a desire to adopt the child. We have previously held that where evidence shows no parental bond between parent and child, the child has adapted well to foster care, and the foster parents wish to adopt, this is sufficient to support the conclusion that continued deprivation is likely to harm the child. *In the Interest of L. G.*, 273 Ga. App. 468, 475 (2) (d) (615 SE2d 551) (2005); *In the Interest of M. E. M.*, 272 Ga. App. at 455; *In the Interest of B. N. S.*, 259 Ga. App. at 625.

As for the second prong of the termination analysis, we are persuaded that the termination of the mother's rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and her "need for a secure and stable home." OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of A. C.*, 272 Ga. App. 165, 168 (2) (611 SE2d 766) (2005). See *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (1) (d) (512 SE2d 652) (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 1, 2006 —
RECONSIDERATIONS DISMISSED MARCH 23, 2006 AND MARCH 31, 2006.

*Michael S. Webb*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Cynthia N. Johnson*, for appellee.